**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FIDELITY NATIONAL FINANCIAL, INC.

      Plaintiff/Counterclaim Defendant,

        v.                                CASE NO.: 3:15-cv-1400-HES-JBT
                                       DISPOSITIVE MOTION

ATTACHMATE CORPORATION,

      Defendant/Counterclaim Plaintiff.
_____/

**<u>FIDELITY NATIONAL FINANCIAL, INC.'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT</u>**

Plaintiff/Counterclaim Defendant Fidelity National Financial, Inc. ("Fidelity"), by counsel, and pursuant to Federal Rule of Civil Procedure 12(c), moves the Court to enter partial judgment on the pleadings in favor of Fidelity on Counterclaim Counts I and II.

## INTRODUCTION

The facts of this case are straightforward. Attachmate licensed its software products to Fidelity pursuant to End-User License Agreements, and based on the results of an audit, Attachmate claims that Fidelity is using more copies of the software than the number of licenses Fidelity purchased. In response to Fidelity's lawsuit, Attachmate has brought counterclaims for copyright infringement and breach of contract. However, to the extent Attachmate's contract claim is based on acts that occurred prior to February 8, 2010, the claims are barred by the statute of limitations. Similarly, Attachmate's copyright claim is barred by the statute of limitations for any purported over-deployments that occurred prior to February 8, 2013. Further, Attachmate's claims that Fidelity breached its contract for over-deploying copies of the software, failing to implement internal controls to prevent unauthorized use, and failing to monitor deployments are preempted by the Copyright Act.

## FACTS ESTABLISHED ON THE FACE OF PLEADINGS AND CONTRACTS[1]

Fidelity purchased "single-user" licenses to use various Attachmate software products. (Compl. ¶¶ 9, 10; Attachmate's Answer ("A. Ans.") ¶¶ 9, 10; Countercl. ¶¶ 11-13, 15, 17, 25; Fidelity's Answer ("F. Ans.") ¶¶ 11, 13, 15, 17, 25). The software products purchased are specific to both the type and version of software. (Countercl. ¶¶

---

[1] For purposes of this motion, Fidelity assumes facts alleged in the Counterclaim are true. Fidelity reserves the right to later dispute these allegations.

12-13, 25; F. Ans. ¶¶ 12, 13, 25).  At issue in this dispute are fourteen software products ("Software"). (Compl. ¶ 23; A. Ans. ¶ 23; Countercl. ¶ 28; F. Ans. ¶ 28).  Attachmate alleges it has registered and owns the Software.  (Countercl. ¶ 24).  However, Attachmate does not identify copyright registrations for all of the Software in dispute and alleges that it only has a pending application for Reflection for the Web v. 12.  (Countercl. ¶ 24).

Each Software is governed by a particular End-User License Agreement ("EULA").  (Countercl. ¶¶ 11-13, 16; F. Ans. ¶¶ 11-13, 16, 25).  Although the EULAs share certain common terms, they vary in material respects.

As to common terms, each EULA is a "click-wrap" license drafted by Attachmate that provides that if the customer fails to agree to the terms of the EULA, the customer may not use the product and must return it.  (Countercl. ¶ 16, Exs. 1-11; F. Ans. ¶ 16).[2] All but one of the EULAs state that they are governed by Washington law.  (Countercl. ¶ 20, Exs. 1-2, 4-11).  Most also provide that the user should "implement internal safeguards to prevent any unauthorized copying, distribution or use of the Software." (Countercl. ¶ 18, Exs. 2, 4-11).  In addition, some EULAs provide that in the event a customer purchases a "concurrent license," the customer must "monitor, control, and (on WRQ's request) report on, concurrent usage both over a network and on individual computers." (Countercl. Ex. 9 p. 1; *see id.* Exs. 3-8 p. 1, Ex. 11 p. 4).

---

[2] Such contracts are contracts of adhesion – the user cannot negotiate terms – and therefore any ambiguity of the terms are construed against Attachmate.  *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) (holding click-wrap license was contract of adhesion where contract was form contract and submitted to customer a "take it or leave it" basis); *Petersen-Gonzales v. Garcia*, 86 P.3d 210, 214 (Wash. Ct. App. 2004) (holding that contracts of adhesion are construed against the drafter).

Apart from those common features, however, each EULA has different terms that govern the scope of the license. (Countercl. ¶ 16, Exs. 1-11; F. Ans. ¶ 16).  Each EULA describes how many copies of the software can be used per license and what constitutes such use.  (Countercl. ¶¶ 15, 17, Exs. 1-11; F. Ans. ¶¶ 15, 17).  The EULAs can be divided into two general groups regarding use: (1) those that purport to mandate the purchase of additional licenses when more than the permissible number of uses – or deployments – have been made, and (2) those that merely prohibit use in excess of the number of licenses purchased.  The first group are those EULAs that provide, "In the event of unauthorized copying, distribution or use of the Software, you must promptly acquire the necessary additional licenses without the benefit of any otherwise applicable discount," or other similar language.  (Countercl. Exs. 2, 9, 10, 11 at ¶ 4).  By comparison, the remaining EULAs do not mandate the purchase of additional licenses but prohibit installing or using copies in excess of the number of licenses purchased. (Countercl. Exs. 1, 3-8).   This latter group of EULAs includes Exhibits 1, 3, 4, 5, 6, 7, and 8 attached to the Counterclaim, and shall be collectively referred to herein as "Preempted EULAs."

In January 2015, Attachmate audited Fidelity's compliance with the EULAs. (Compl. ¶¶ 11, 13; A. Ans. ¶ 11; Countercl. ¶ 28).  According to Attachmate, the audit revealed alleged shortfalls, or "over-deployments," in the number of purchased licenses. (Compl. ¶ 12; A. Ans. ¶ 12; Countercl. ¶ 28).  Attachmate then demanded that Fidelity pay Attachmate in excess of three million dollars in licensee fees, prejudgment interest dating back for over the ten years that Fidelity used the Software, and other costs.

(Compl. ¶ 13; A. Ans. ¶ 13).  Fidelity disputes the demand, as well as the methodology of Attachmate's audit and Attachmate's conclusions stemming therefrom.  (Compl. ¶14).

When the parties could not resolve their dispute, Fidelity sought declaratory relief from the Court that it was not infringing Attachmate's copyrights and it was not in breach of the EULAs.  (Compl. Counts I-III).  In response, Attachmate filed two counterclaims against Fidelity, one for breach of contract and one for copyright infringement.  (Countercl. Counts I and II).  With respect to its copyright claim, Attachmate alleges that Fidelity "infringed Attachmate's copyrights in the Attachmate Products when it made unauthorized copies of the Attachmate Products, and improperly provided devices and users with the ability to ability to [sic] use, access, display, run or otherwise interact with the Attachmate Products in excess of the applicable license agreements."  (Countercl. ¶ 39).  Attachmate claims these same acts constitute a breach of contract, alleging that Fidelity breached the contracts by "installing, accessing, interacting with and/or using the Attachmate Products on devices without paying the required license fees."  (Countercl. ¶ 48).  Attachmate further alleges, without identifying any specific provision in the EULAs, that Fidelity breached the EULAs by failing to monitor or control installation of or use of the Software "as required by the license agreements," and failing to implement internal safeguards to prevent any unauthorized copying.  (Countercl. ¶¶ 49-50).

Fidelity now moves for judgment on the pleadings regarding its affirmative defenses that Attachmate's claims were barred by the applicable statute of limitations, barred for failure to satisfy the precondition of registering its copyrights, barred by the

doctrine of estoppel, and preempted by the Copyright Act.   (F. Ans., Affirmative Defenses ¶¶ 2, 3, 10, 12).

## **LEGAL STANDARD**

A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011).   While the Court accepts the facts alleged in the complaint as true and draws interferences in favor of the nonmovant, like a motion to dismiss, "the 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Accordingly, "judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  *Maxum Indemnity Co. v. Florida Construction Services, Inc.*, 59 F. Supp. 3d 1382, 1385 (M.D. Fla. 2014). The pleadings the court considers includes the complaint, answers, and counterclaim. *Florida Evergreen Foliage v. E.I. DuPone De Nemours and Co.*, 165 F. Supp. 2d 1345, 1349 (S.D. Fla. 2001).  Further, the Court may consider contracts attached to an answer or counterclaim when the contracts are central to the claims without converting a motion for judgment on the pleadings to one for summary judgment.  *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002).

# LEGAL ARGUMENT

**I.**  **Statute of Limitations Substantially Limits Attachmate's Counterclaims.**

It is apparent from the face of the Counterclaim that Attachmate's counterclaims arising out of purported breaches that occurred prior to February 8, 2010 and any purported acts of copyright infringement prior to February 8, 2013 are barred by the applicable statute of limitations. Accordingly, Fidelity is entitled to judgment as a matter of law. *See Doe v. St. John's Episcopal Parish Day School, Inc.*, 997 F. Supp. 2d 1279, 1286 (M.D. Fla. 2014) (granting motion to dismiss claims that were barred by the statute of limitations).

**A.**  **Alleged Breaches of Contract Before February 8, 2010 are Barred by the Statute of Limitations.**

Washington law[3] requires all claims based on a written contract be brought within six years. RCWA 4.16.040. A claim for breach of contract accrues, and the six years begins to run, on the date of the breach. *Kelly v. Allianz Life Ins. Co. of N. America*, 314 P.3d 755 (Wash. Ct. App. 2013). Notably, the discovery rule does not apply to an action for breach of contract, meaning it is immaterial when Attachmate learned of Fidelity's alleged breach of the license agreements. *Id*. Thus, any purported acts that occurred prior to February 8, 2010 – six years before Attachmate filed its claim against Fidelity – are barred as a matter of law.

---

[3] Even if Florida law applies, which may for the EULA attached as Exhibit 3 which lacks a Washington choice of law provision, Florida requires claims be brought within five years of the date of the breach. Fla. Stat. § 95.11(2)(b); *Clark v. Estate of Elrod*, 61 So. 3d 416, 418 (Fla. Dist. Ct. App. 2011). At minimum,, Attachmate's claims are barred for acts that occurred prior to February 8, 2010.

In particular, Attachmate's claim that Fidelity failed to pay for additional licenses when it used more copies of the software than purchased accrued when Fidelity purportedly used excess copies of the Software. (Countercl. ¶ 48).  Attachmate is barred from recovery under a breach of contract theory for any over-deployments that occurred prior to February 8, 2010.  Similarly, although the claim that Fidelity breached the provision regarding implementing internal safeguards to prevent unauthorized copies is preempted, such a claim necessarily accrued when an unauthorized copy was purportedly used.  (Countercl. ¶ 50). Therefore, Attachmate's claims arising out of a breach of the internal safeguards provision are also barred for any over-deployments that occurred prior to February 8, 2010. While the "failure to monitor" claim does not apply to Fidelity, as discussed below, it nevertheless is similarly limited to acts that occurred after February 8, 2010. (Countercl. ¶ 49).

Finally, Attachmate alleges that Fidelity breached the EULAs by "failing to pay maintenance services for each of its actual deployments of Attachmate software products for which [Fidelity] had purchased maintenance plans." (Countercl. ¶ 51).  Again, a breach necessarily accrued when Fidelity purportedly deployed the software without paying for maintenance services.  Claims arising out of a failure to pay maintenance services for deployments prior to February 8, 2010 are barred.

Accordingly, Attachmate's breach of contract claims all accrued when Fidelity deployed the Software.  Thus, Attachmate's breach of contract claims are all barred to the extent they seek damages for instances where Fidelity used, accessed, installed, displayed, ran or otherwise interacted with the Software prior to February 8, 2010.

**B.** **The Copyright Act Bars Recovery for Alleged Over-Deployments Before February 8, 2013.**

Like Attachmate's breach of contract claims, its claims under the Copyright Act are limited by the applicable statute of limitations. The Copyright Act provides, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A claim under the Copyright Act accrues when an infringing act occurs. *Petrella v. Metro-Goldwyn Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). The United States Supreme Court recently held that when, as Attachmate is alleging here, "a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind." *Id.* at 1970. The Copyright Act's three-year statute of limitations serves to "insulate[] [the alleged infringer] from liability for earlier infringements of the same work." *Id.* at 1969. Accordingly, "a successful plaintiff can gain retrospective relief *only* three years back from the time of the suit. No recovery may be had for infringement in earlier years." *Id.* at 1973 (emphasis added).

Attachmate seeks damages from individual reproductions that occurred over the course of several years. (Compl. ¶ 13; Countercl. ¶¶ 28, 38, 39). Attachmate's cause of action therefore accrued at the time Fidelity reproduced the Software in violation of the Copyright Act. Pursuant to the Copyright Act and *Petrella*, Attachmate's claims are limited to any reproduction of the Software that occurred within three years of when Attachmate filed suit. Consequently, Attachmate's copyright infringement claim is

limited to purported over-deployments that occurred after February 8, 2013. Attachmate cannot recover any damages under the Copyright Act for purported infringements that occurred prior to that date and Fidelity is entitled to judgment on the pleadings to the extent Attachmate seeks to recover for such purported infringements.

## II.    <u>Attachmate Fails to Meet the Mandatory Precondition of Registration for its Copyright Claims.</u>

Fidelity is also entitled to judgment on the pleadings with respect to Attachmate's claims arising out of unregistered or pending copyright applications because registration is a mandatory precondition for a copyright infringement action. *See Marc Anthony Builders, Inc. v. Javic Properties, LLC*, No. 8:11-cv-00432-EAK, 2011 WL 2709882, at *2 (M.D. Fla. July 12, 2011) (dismissing copyright infringement claim and holding that a pending application for copyright registration fails to meet the statutory requisites).

The Copyright Act prohibits bringing an action for infringement "until preregistration or registration of the copyright claims has been made in accordance with [the Copyright Act]." 17 U.S.C. § 411(a). While the registration requirement is no longer a jurisdictional requirement, the Eleventh Circuit and District Courts routinely hold that the registration requirement "is a mandatory precondition, and [an] action should be dismissed if it is not met." *Marc Anthony Builders,* 2011 WL 2709882, at *2 (dismissing copyright infringement claim because plaintiff only submitted an application and had not received a certificate of registration); *Dowbenko v. Google Inc.*, 582 Fed. Appx. 801, 0805 (11th Cir. 2014) (dismissing copyright claim for unregistered copyright); *Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-cv-60-T-30MAP, 2012 WL 2116136, at *3 (M.D. Fla. June 11, 2012) (dismissing claims regarding unregistered

copyrights); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488-89 (11th Cir. 1990) (same) (abrogated on other grounds). Satisfying the prerequisite "requires the copyright holder to obtain a certificate of registration from the Copyright Office before bringing suit." *See Marc Anthony Builders*, 2011 WL 2709882, at *2. Thus, merely filing an application for registration fails to meet the mandatory precondition and is properly dismissed. *Id.*; *M.G.B. Homes*, 903 F.2d at 1488-89.

Attachmate's copyright infringement claims fail as a matter of law for those software products that Attachmate has not received a certificate of registration from the Copyright Office. *Marc Anthony Builders*, 2011 WL 2709882, at *2. This includes, but is not limited to Reflection for the Web 2014 v. 12.0, which Attachmate explicitly states it only has an application pending, (Countercl. ¶ 24), as well as all other Software that Attachmate has not obtained a certificate of registration as of February 8, 2016. Attachmate has failed to meet the mandatory precondition for these claims and Fidelity is entitled to judgment in its favor.

## III.  Attachmate's Breach of Contract Counterclaim is Substantially Preempted by the Copyright Act.

### A.  Attachmate's Counterclaim Lacks an "Extra Element" and is Preempted.

Attachmate alleges that Fidelity has breached the EULAs by "failing to pay Attachmate the required license fees for all instances when it provided the ability to use… [the Software], and by installing…or using the [Software] on devices without paying the required license fees." (Countercl. ¶ 48). However, Attachmate fails to identify which EULA Fidelity purportedly breached or which provision within any EULA gives rise to this allegation. In so doing, Attachmate wholly ignores its own

allegation that each software product is governed by a different EULA, (Countercl. ¶¶ 11-13, 20), which mandates that any purported breach be analyzed under each EULA. Upon proper analysis of each EULA, it is apparent that Attachmate's allegation fails as a matter of law for any software that is governed by the Preempted EULAs, since those EULAs do not require that Fidelity purchase additional licenses. As such, Fidelity was under no obligation to pay any "required license fees" for extra copies so it necessarily could not have breached such a non-existent provision. All that is left of Attachmate's claim arising out of the Preempted EULAs is that Fidelity purportedly used more copies than permitted. Such a claim is squarely within the preemptive field of the Copyright Act.

Federal courts frequently find a motion for judgment on the pleadings a proper vehicle for resolving preemption under the Copyright Act. *See Attachmate Corp. v. Sentry Ins. a Mutual Co.*, No. C08-1035RAJ, 2009 WL 1547264, at *3 (W.D. Wash. Jan 13, 2009) (granting judgment on the pleadings on Attachmate's breach of contract claims due to Copyright preemption); *Eyal R.D. Corp. v. Jewelex Ney York Ltd.*, 784 F. Supp. 2d 441 (S.D. N.Y. 2011) (granting judgment on the pleadings on state law claims as preempted by the Copyright Act); *Stewart Title of California, Inc. v. Fidelity National Title Co.*, 279 Fed. Appx. 473 (9th Cir. 2008) (upholding District Court's grant of defendant's judgment on the pleadings regarding most of plaintiff's state law claims because they were preempted by the Copyright Act). Fidelity is entitled to judgment on the pleadings in its favor on these claims.

Pursuant to the Copyright Act, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section

106 in works …within the subject matter of copyright as specified by sections 102 and 103…are governed exclusively by [the Copyright Act]." 17 U.S.C. § 301. Accordingly, "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." *Id.* A state cause of action is preempted by the Copyright Act if the rights at issue "(1) fall within the subject matter of copyright set forth in sections 102 and 103 and (2) are equivalent to the exclusive rights of section 106." *Arbitron Inc. v. Renda Broadcasting Corp.*, No. 3:13-cv-716-J-34JRK, 2014 WL 1268587 (M.D. Fla. Mar. 27, 2014). One such exclusive right granted by section 106 is the right "to reproduce the copyrighted work in copies." 17 U.S.C. § 106(a).

To determine whether the rights asserted by a plaintiff are equivalent to the exclusive rights provided by section 106 of the Act, the Eleventh Circuit applies the "extra element test." *Foley v. Luster*, 249 F.3d 1281, 1286 (11th Cir. 2001). Under this test, "if an extra element is required instead of or in addition to acts of reproduction, performance, distribution, or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." *Id.* Federal courts have noted that the name "extra element test" is somewhat misleading, as the analysis does not compare the elements of the state law claim with the claim under the Act. *See, e.g., Jaggon v. Rebel Rock Entertainment, Inc.*, No. 09-61144-Civ., 2010 WL 3468101 at *2 (S.D. Fla. Sept. 1, 2010). Rather, the extra element that is required for the state law claim to survive preemption is one that changes the nature of the claim, such that "it is *qualitatively* different from a copyright infringement claim." *Foley*, 249 F.3d at 1285 (emphasis in original) (internal quotations

omitted).  Thus, "the Copyright Act preempts a claim premised entirely on allegations of copying, without any additional elements required to collect."  *Marc Anthony Builders, Inc.*, 2011 WL 2709882, at *4 (finding state law claim based on allegations of copying a copyrighted work was preempted); *Chen v. Cayman Arts, Inc.*, No. 10-80236-CIV, 2011 WL 3903158, at *6 (S.D. Fla. Sept. 6, 2011) ("If the promise [in a contract] amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted, as such claims amount to exclusive rights under section 106."); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990) (finding unfair competition claim based only on acts of copying were preempted).

Although the Eleventh Circuit has relied on the Seventh Circuit opinion in *ProCD, Inc. v. Zeidenberg* for finding that breach of contract is not preempted, such a finding is not automatic.  *See, e.g., Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1318-19 (11th Cir. 2001) (citing *ProCd, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996)); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996).  Rather, whether a breach of contract claim is preempted necessarily depends on the contract itself and the obligations that were purportedly breached.  *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, No. 98-8122-CIV, 1998 WL 1969648 at *5 (S.D. Fla June 18, 1998) (holding that contract which prohibited customer from delivering the copyrighted work to a third party contained an extra element because the element of delivery is not contemplated by the Copyright Act); *ProCD*, 86 F.3d at 1455.   Indeed, the Seventh Circuit in *ProCD* refused to adopt "a rule that anything with the label 'contract' is necessarily outside the preemption clause: the variations and possibilities are too numerous to foresee."  *ProCD*,

86 F.3d at 1455.  The Sixth Circuit, in a decision approved of by the Southern District of Florida, similarly held that not all breach of contract claims survive preemption simply because they involve the additional element of promise.  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) (cited with approval by *Chen*, 2011 WL 3903158, at *6).  The leading treatise on copyrights also concludes a claim labeled as a "contract" should be struck down when it "nonetheless complain[s] directly about the reproduction of expressive materials."  M. Nimmer, *Nimmer on Copyright* § 1.01[B][1][a]. at 1-19 and 1-22 (December 1997).  "The contrary result would clearly violate the rule that state law rights are preempted when they would be abridged by an act which in and of itself would infringe one of the exclusive rights of [the Copyright Act]."  *Wrench LLC*, 256 F.3d at 457-58.

Other federal courts using the extra element test have found breach of contract claims to be preempted.  In fact, two opinions by the Western District of Washington – where Attachmate is located – have held that Attachmate's breach of contract claims against its customers arising out of EULAs with nearly identical language as that presented here were preempted.  In *Attachmate v. Health Net, Inc.*, the court distinguished the EULAs that mandated Attachmate's customer purchase additional licenses for any excessive use of the software from those that merely prohibited using more copies of the software than the customer had purchased licenses.  *Attachmate Corp. v. Health Net, Inc.*, No. C09-1161 MJP, 2010 WL 4365833, at *4 (W.D. Wash. Oct. 26, 2010).  In applying the same "extra element" test for copyright preemption as used by the Eleventh Circuit, the court reasoned that the former contracts contained an "extra

element" because the contracts imposed an additional obligation on the customer to purchase more licenses, which is not an exclusive right granted by the Copyright Act. *Id.* at \*1. The court held that Attachmate's breach of contract claims arising out of the EULAs that did not contain such a requirement were preempted. *Id.* at \*4. The Court reasoned that absent such a bilateral agreement regarding compensation for additional copies of software, the contracts "relate only to the permissible uses of the software," and "there is only an agreement not to reproduce or distribute the copyrighted works, which is squarely within the preemptive field of the Copyright Act." *Id.* Thus, there was no extra element and the claims were preempted. *Id.*

Further, the court held that any claims arising out of the EULAs internal safeguard and monitoring requirements were derivative of the rights afforded by the Copyright Act and Attachmate's breach of contract claims related to those obligations were preempted. *Id.* The court therefore granted summary judgment in favor of Health Net on Attachmate's breach of contract claims for EULAs that did not require compensation for additional use of the software, and for any purported breaches of the duty to implement internal safeguards. *Id.*

Similarly, the court in *Attachmate v. Sentry Insurance* explained that the EULAs at issue lacked any mutual promise requiring the customer to pay Attachmate for excess copies. *Attachmate Corp. v. Sentry Ins. a Mutual Co.*, No. C08-1035RAJ, 2009 WL 1547264, at \*3 (W.D. Wash. Jan 13, 2009). Instead, the EULAs prohibited the installation of more than one copy of the software. *Id.* Without this promise to pay for additional copies, Attachmate's breach of contract claim arising out of use of its software

15

without a license was nothing more than a copyright infringement claim. *Id.* Accordingly, the court held Attachmate's breach of contract claim was preempted and granted the defendant's motion for judgment on the pleadings. *Id.* at *4. Notably, the court granted the motion over Attachmate's argument that it's pleading was sufficient, holding that the allegation that the EULA creates rights not existing under copyright law is a legal conclusion to which the court is under no obligation to accept. *Id.* (citing *Twombly*, 550 U.S. 544).

The Preempted EULAs at issue here contain no provision requiring the purchase of additional licenses if additional copies of the software are used. (Countercl. Exs. 1, 3-8). Rather, just as the district court in Washington held in interpreting other Attachmate EULAs, the Preempted EULAs only grant Attachmate the same rights that are exclusively granted by the Copyright Act – that is, the right to exclusively reproduce its copyrighted work. Similarly, Attachmate's allegation that Fidelity breached the EULAs by failing to implement internal safeguards amounts to nothing more than a derivative claim of the rights afforded by the Copyright Act. In addition, as discussed more below, there is no duty imposed by Fidelity's licenses to monitor compliance, so Attachmate's claims under this purported provision are yet again another claim under the Copyright Act. There are no extra elements required for any of these purported breaches and the rights Attachmate seeks to protect are grounded in the Copyright Act. These claims are therefore preempted and Fidelity is entitled to judgment as a matter of law.

**B.  Attachmate is Barred By Collateral Estoppel.**

Attachmate is barred from re-litigating its breach of contract claims that were previously held by two prior federal decisions to be preempted pursuant to the doctrine of defensive nonmutual collateral estoppel.  The Eleventh Circuit bars a litigant from re-litigating an identical issue that was actually litigated in a prior proceeding and which was a crucial and necessary part of the prior judgment.  *A.J. Taft Coal Co., Inc. v. Connors*, 829 F.3d 1577, 1580 (11th Cir. 1987); *Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-cv-1468-T-33TBM, 2012 WL 4077238, at *5 (M.D. Fla. Sept. 17, 2012) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)) ("The purpose of defensive collateral estoppel is to 'preclude a plaintiff from relitigating identical issues by merely 'switching adversaries'.'").   Attachmate previously fully litigated the identical issue of preemption of its breach of contract claims regarding the failure to pay additional licenses, the failure to implement internal safeguards, and the failure to monitor under nearly identical EULAs before the federal district court in Washington.   Indeed, the EULAs at issue in *Sentry* are identical to Exhibit 1 of the Counterclaim but for the name of the software, and the preempted EULA in *Health Net* is identical to Exhibit 7 of the Counterclaim but for the introductory paragraph in Exhibit 7. *Sentry Ins. Co.*, No. 2:08-cv-01035-RAJ at Dkt. 1, Exhibits B and C; *Health Net*, No. 2:09-cv-01161-MJP at Dkt. 55 ¶ 9, Dkt. 55-3 pgs. 116-122.  Further, the holding that Attachmate's breach of contract claims were preempted under these EULAs was crucial to the decisions as the courts granted summary judgment and judgment on the pleadings in favor of the customer and against Attachmate because of it.  Attachmate is now simply

reasserting the breach of contract claims it knows are preempted. However, the law prohibits it from doing so. Accordingly, Attachmate is estopped from bringing these claims and Fidelity is entitled to judgment as a matter of law for this reason, too.

### C. Claims Arising Out of Purported Unlicensed Use of Software are Claims for Unauthorized Reproduction, a Right Exclusive to the Copyright Act.

Although Attachmate does not identify a specific provision in the EULAs that it complains was breached, Attachmate did attach the EULAs it claims governs the Software in dispute.[4] Because Attachmate claims that Fidelity breached the EULAs by using unlicensed copies of the software without paying "the required license fees," (Countercl. ¶ 48), the terms governing use and payment for excessive use, to the extent it exists, are implicated. The contract provision related to copies per license is generally found in the section titled "Grant of License" or "License," which permits Fidelity to install, use, access, display, run or otherwise interact with one copy of the software. (Countercl. Ex. 1 p. 1; *id.* Ex. 2 pgs. 1, 6; *id.* Ex. 3 p. 2; *id.* Ex. 4 p.1; *id.* Ex. 5 p. 2; *id.* Ex. 6 p.1; *id.* Ex. 7 p. 1; *id.* Ex. 8 p. 3; *id.* Ex. 9 p. 1; *id.* Ex. 10 pgs. 1, 7; *id.* Ex. 11 pgs. 1, 14). Some of the EULAs further provide that in the event an audit by Attachmate reveals that unlicensed copies of the software are used, Fidelity must purchase the additional licenses. (Countercl. Exs. 2, 9, 10, 11 at ¶ 4). However, the Preempted EULAs contain

---

[4] Fidelity disputes that Exhibits 4 and 8 attached to the Counterclaim are licenses that govern any of the Software at issue here. (F. Ans. ¶ 20). However, that dispute is not relevant for the purposes of this motion.

no such requirement or similar bilateral agreement[5] mandating compensation for additional installations of the software.  (Countercl. Exs. 1, 3, 4-8).

Rather, the Preempted EULAs restrict the number of copies of software that Fidelity can use, install, or run, but impose no rights or obligations to the extent unlicensed copies are purportedly used, installed, or run.  The Preempted EULAs, therefore, allow Attachmate to control the use of its software in exchange for Fidelity's promise not to use, install, or run excess copies of the copyrighted software.  Necessarily then, the Preempted EULAs "amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work."  *Chen*, 2011 WL 3903158, at *6.

The right to reproduce and distribute are two of the exclusive rights granted to a copyright owner under section 106 of the Copyright Act.  17 U.S.C. § 106(1) and (3).  The Preempted EULA's add nothing more.  Consequently, the Preempted EULAs grant Attachmate rights that are the equivalent to, indeed the precise rights afforded under the Copyright Act.  Attachmate has no additional or "extra" rights that it is seeking to enforce in its breach of contract claim.  The Preempted EULAs simply do not afford it any such additional right.  Therefore, "Attachmate's breach of contract claim is no different than a copyright infringement claim," and is preempted.  *Sentry Ins.*, 2009 WL 1547264, at *3; *Chen*, 2011 WL 3903158, at *6.

---

[5] To be clear, the EULAs are still click-wrap contracts of adhesion. The Preempted EULA impose no obligation on Fidelity to purchase additional licenses in exchange for any promises made by Attachmate, and thus there was no bilateral agreement for such an obligation to exist.

**D. There also is no Implied-In-Fact Promise to Pay for Additional Copies Beyond Those Licensed.**

Like its broad and non-specific allegations regarding breach of the EULAs, Attachmate appears to also attempt to allege that Fidelity breached an implied-in-fact promise to pay for additional copies beyond the number of licenses purchased. Attachmate refers to its count as "Breach of Express and Implied Contract" and alleges that Fidelity breached "independent covenants *in the contracts*." (Countercl. Count II, ¶ 48-51). Apart from this internally inconsistent allegation, Attachmate makes no further allegations regarding any purported implied-in-fact promise, and any claim based on this theory must be dismissed.

"In Washington, an implied contract exists if there is an offer; there is an acceptance; the acceptance is in the terms of the offer; it is communicated to the offeror; there is mutual intention to contract; and there is a meeting of the minds of the parties." *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103, 1107 (W.D. Wash. 2011). Attachmate makes no allegation (and there is no language in the Preempted EULAs) that Attachmate offered Fidelity use of the software subject to a new provision not in the EULAs which required payment whenever additional copies were "used, installed, or accessed." There is also no allegation that Fidelity accepted such a term, and no allegation that there was a meeting of the minds on such a term. (*See* Countercl.). In fact, the EULAs specifically state the contrary as they all contain integration clauses providing that the "License shall constitute the complete, final and exclusive statement of the terms and conditions between the parties with respect to the license of the Software." (Countercl. Ex. 3 ¶ 15; *see also id.* Ex. 1 ¶ 9, Ex. 4 ¶ 10, Ex. 5 ¶ 10, Ex. 6 ¶ 11, Ex. 7 ¶

11, Ex. 8 ¶ 11).   Under these explicit integration clauses, any terms and conditions not included in the Preempted EULAs – like a provision requiring payment for additional copies of the software – are prohibited from being read into the EULAs.   *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1148 (9th Cir. 2004) (holding that it is a basic tenant of contract law that when an agreement contains an integration clause, there can be no implied terms).   Consequently, there is no implied term that Fidelity was obligated to purchase additional licenses.

Accordingly, there is no provision in the Preempted EULAs, or an "implied" term that creates an "extra element" that fundamentally changes these claims from a copyright infringement claim.   Thus, Attachmate's only recourse for purported use of its Preempted EULA software that exceeds the licenses purchased is through the Copyright Act and not through a state law breach of contract action.   Attachmate's breach of contract counterclaim arising out of Fidelity's purported "fail[ure] to pay Attachmate the required license fees for all instances when it provided the ability to use…the Attachmate Products through Fidelity's servers and by installing…or using the Attachmate Products on devices without paying the required license fees" fail as a matter of law and Fidelity is entitled to judgment in its favor.

**E.   Counterclaims Arising Out of a Duty to Implement Internal Safeguards are Preempted.**

Attachmate also claims that Fidelity breached the EULAs by "failing to implement internal safeguards to prevent any unauthorized copying, distribution, or use of any of the Attachmate Products." (Countercl. ¶ 50).   Again, Attachmate fails to cite any provision in the EULAs that would support such a claim.   Examination of each

EULA reveals that Exhibits 1 and 3 contain no provision mandating Fidelity implement internal safeguards.  Consequently, because the EULAs are fully integrated contracts between the parties, Attachmate's claim fails as a matter of law with respect to any purported breaches of the duty to implement internal safeguards as to software governed by Exhibits 1 and 3 because no duty exists under those EULAs.

EULAs attached as Exhibits 2 and 4-11 provide that "You agree to: implement internal safeguards to prevent any unauthorized copying, distribution, or use of the Software…."  (Exs. 2, 4-11 at ¶ 4).  Attachmate's claims arising out of these EULAs are preempted because there again is no "extra element" and this claim is the functional equivalent of a claim under the Copyright Act.  By its express terms, the customer should implement internal safeguards that would "prevent any unauthorized copying, distribution, or use of the Software." (Ex. 2, 4-11) (emphasis added).  Failing to implement such safeguards, and thus preventing "copying, distribution, or use" of the copyrighted software, results in unauthorized copies being made, distributed, or used, which are precisely the rights secured by the Copyright Act.  Thus, the internal safeguards clause in the EULAs "amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, [and] the contract claim is preempted, as such claims amount to exclusive rights under section 106."  *Chen*, 2011 WL 3903158, at *6.  Fidelity is entitled to judgment in its favor for all breach of contract claims arising out of the internal safeguards provision for all EULAs.

**F.  Claims Arising Out of a "Monitoring Compliance" Provision in All EULAs are Similarly Preempted.**

Attachmate alleges that Fidelity purportedly breached the EULAs by "failing to monitor or control installation of, access to, interaction with and/or use of the Attachmate Products as required by the license agreements." (Countercl. ¶ 49).  Attachmate's lack of citation to any provision in any of the EULAs is particularly conspicuous for this clause because no language exists regarding monitoring compliance in Exhibits 1, 2, and 10, and the only provision in the remaining EULAs that relate to monitoring compliance is found in the section regarding the purchase of "concurrent licenses." (Countercl. Exs. 3-9 p. 1, Ex. 11 p. 4, Exs. 1, 2, 10).  For those EULAs that contain monitoring language, they provide "If you acquire concurrent license for the Software, you may allow as may users to Run the Software at the same time as the number of concurrent licenses you acquire, provided you…(ii) monitor, control, and (on WRQ's request) report on, concurrent usage both over a network and on individual computers." (Countercl. Ex. 9 p. 1; *see id.* Exs. 3-8 p. 1, Ex. 11 p. 4).

This type of license is not at issue in this lawsuit as Attachmate does not allege that Fidelity purchased "concurrent licenses."  Rather, Attachmate alleges that it granted Fidelity a single user license.  (Countercl. ¶¶ 15, 17 (quoting portion of a EULA related to single user license, not concurrent licenses)).  Accordingly, this "monitor and control" provision, to the extent it exists in some of the EULAs, does not apply to Fidelity and cannot form the basis for a breach of contract claim.  Even if true concurrent licenses were at issue, this provision does not create an "extra element" and Attachmate's breach of contract claims arising out of the purported failure to "monitor or control installation

of, access to, interaction with and/or use" of the Software is preempted and fails as a matter of law.  Fidelity is entitled to judgment on the pleadings for purported breaches of this provision under all EULAs.

## CONCLUSION

For the foregoing reasons, there are no material facts in dispute and Fidelity is entitled to judgment in its favor with respect to the following:

(1) Attachmate's breach of contract claims to the extent it alleges any actions by Fidelity that occurred prior to February 8, 2010 that constitute a breach of any EULAs (Countercl. Count II);

(2) Attachmate's copyright infringement claims to the extent it alleges any purported over-deployments of any Attachmate software by Fidelity prior to February 8, 2013 (Countercl. Count I);

(3) Attachmate's copyright infringement claims arising out of any Attachmate software products that Attachmate did not have a certificate of registration for by February 8, 2016 (Countercl. Count I);

(4) Attachmate's breach of contract claims arising out of a failure to pay license fees for instances when Fidelity purportedly "provided the ability to use, access, display run or otherwise interact with the [Software] through Fidelity's servers, and by installing accessing, interacting with and/or using the [Software] on devices" with respect to all software governed by the Preempted EULAs (Countercl. ¶ 48, Exs. 1, 3-8);

(5) Attachmate's breach of contract claims arising out of a failure to implement internal safeguards for all Software (Countercl. ¶ 50, Exs. 1-11); and

(6) Attachmate's breach of contract claims arising out of a failure to monitor or control installation of, access to, interaction with and/or use of all Software (Countercl. ¶ 49, Exs. 1-11).

Respectfully submitted,

/s/ Stephen E. Reynolds
Thomas E. Mixdorf (Indiana Bar 16812-49)
E-mail: Thomas.Mixdord@icemiller.com
Stephen E. Reynolds (Indiana Bar 28032-49)
E-mail:  stephen.reynolds@icemiller.com
Kaitlyn J. Marschke (Indiana Bar 34144-29)
E-mail: Katie.Marschke@icemiller.com
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone No. 317-236-2391
Facsimile No. 317-592-4736

and

Tamarah E. Brodsky (Florida Bar 567108)
E-mail: Tamarah.Brodsky@fnf.com
Fidelity National Law Group
200 West Cypress Creek Road, Suite 210
Fort Lauderdale, Florida 33309
Telephone No: (954) 465-2145
Facsimile No: (954) 414-2101

*Attorneys for Plaintiff,*
*Fidelity National Financial, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Stephen E. Reynolds

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282