**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FIDELITY NATIONAL FINANCIAL, INC.

      Plaintiff/Counterclaim Defendant,

        v.                         CASE NO.: 3:15-cv-1400-HES-JBT

ATTACHMATE CORPORATION,

      Defendant/Counterclaim Plaintiff.
_____/

**<u>FIDELITY NATIONAL FINANCIAL, INC.'S MOTION TO COMPEL
ATTACHMATE'S PRODUCTION OF DOCUMENTS AND ANSWERS TO
INTERROGATORIES</u>**

Fidelity served written discovery to obtain documents and information that bear on the central disputes in this case.  Attachmate refused to produce several topics of information, ignoring key issues in this dispute.  Fidelity has made numerous attempts to resolve this matter without Court intervention, and because the parties are at an impasse, Fidelity requests the Court's assistance in obtaining these highly relevant documents.

### Background Facts

In this software licensing dispute, Fidelity purchased licenses to use Attachmate software products.  Compl. ¶ 9.  Each product comes with an End User License Agreement ("EULA").  Countercl. ¶¶ 11-16.  Each EULA contains slightly different terms, but generally describes what Attachmate contends is the permissible use of the software.  *See id.*  In January 2015, Attachmate told Fidelity it had decided to audit Fidelity's compliance with the EULA terms, and employed Deloitte to inventory Fidelity's software deployment. Compl. ¶ 11; Ans. ¶ 11.

Based on the work performed by Deloitte, in April 2015 Attachmate reported that Fidelity had allegedly over-deployed Attachmate software and demanded that Fidelity pay Attachmate almost $4 million in license fees, prejudgment interest, and other costs. Compl. ¶¶ 12-13; Ans. ¶¶ 12-13.  Attachmate's demand is based on inaccurate audit methodologies and an incorrect interpretation of the licenses.  Compl. ¶¶ 14-15.

This is not the first time Attachmate has made significantly inflated demands in an attempt to extort money from its customers.  Attachmate has regularly inventoried its customers for years, and often these result in lawsuits just like the present one.  *See* Compl. ¶ 18 (citing numerous cases of Attachmate's litigation against its customers).

1

Fidelity filed the instant lawsuit to protect itself from Attachmate's predatory tactics, seeking a declaratory judgment that it is not breaching the licenses or infringing Attachmate's copyrights.  Fidelity also brought a claim under Florida's Deceptive Unfair Trade Practices Act arising out of Attachmate's willful and purposeful unconscionable, unfair, and deceptive acts or practices.  *See* Compl. Count 4.  More specifically, Attachmate uses improper auditing methods to reach its unilateral deployment count, resulting in inflated figures that serve as the basis for Attachmate's demand.  Attachmate then takes these incorrect numbers and misstates its license agreements to its customers, including Fidelity, in order to further inflate the amount of over-deployments and money purportedly owed to Attachmate.  Compl. ¶ 45.

<u>History of Discovery Dispute and Efforts to Meet and Confer</u>

On March 25, 2016, Fidelity served its First Set of Interrogatories to Defendant ("Interrogatories") and First Set of Requests for Production to Defendant ("Requests," and together with the Interrogatories, "Discovery").  The Discovery sought information about Attachmate's interpretation of the EULAs, the circumstances surrounding Attachmate's license inventory of Fidelity, Deloitte's involvement in that software inventory, license compliance inventories of other customers, and Attachmate's software pricing, among others.

Attachmate served its written responses to the Discovery on May 9, 2016 but did not produce any documents.  Instead, Attachmate simply stated throughout some of its responses that documents would be produced "under separate cover."[1] For others, Attachmate refused to produce documents or provide any information regarding several subjects that are central

---

[1] A true and accurate copy of Attachmate's responses to Fidelity's Requests are attached hereto as Exhibit A.

to this dispute.  *See* Responses to Requests Nos. 4-9, 26-28, 32-33, 36, 38-39, 41-47; Answers to Interrogatories Nos. 4-6, 12, 13, 16, 18-19.  Attachmate also purported to use Rule 33(D) to answer some Interrogatories; however, the documents produced do not supply complete answers.  *See* Responses to Interrogatories Nos. 3(a, b, e) and 16.

Efforts to Resolve Dispute

On May 12, Fidelity sent Attachmate a letter identifying these deficiencies.[2] Attachmate did not respond to the May 12 correspondence nor produce the documents it stated it would in its original written responses.  On June 7, Fidelity sent Attachmate another letter following up on Attachmate's deficient discovery responses.[3]

On June 13, counsel for the parties participated in a call regarding Attachmate's responses. Counsel for Attachmate represented that many of Fidelity's concerns would be addressed with the forthcoming document production, and Fidelity agreed to put them on hold until Attachmate produced its documents.  Fidelity also limited the scope of some of the Discovery, and Attachmate's counsel stated that Attachmate would supplement a few responses.  Attachmate maintained its objections to the remaining requests.

On June 14, Attachmate produced some documents but not the supplemental responses promised on the June 13 call.  Fidelity gave Attachmate a week grace period, but Attachmate still did not provide the supplemental responses.  On June 20, counsel for Fidelity emailed Attachmate's counsel seeking the status of them.  Attachmate's counsel told Fidelity's counsel on a call on June 30 that supplemental responses to the Interrogatories

---

[2] A true and correct copy of Fidelity's May 12 letter is attached hereto as Exhibit B.
[3] A true and correct copy of the June 7 letter is attached hereto as Exhibit C.

3

would be provided "tomorrow or the next day" and supplemental documents produced by July 6.  Nothing was produced in the time stated.

Moreover, upon reviewing the document production it became clear that Attachmate's assertion that its document production would resolve many of Fidelity's concerns was incorrect as many requests remained unanswered.  Further, Attachmate produced several documents that contained redactions, but failed to produce a privilege log explaining the redactions.  On July 7, Fidelity sent a letter to Attachmate identifying the remaining deficiencies, and requested that Attachmate confirm that it did not have any other documents or identify the bates number for what Fidelity believes are missing documents.[4]

Attachmate supplemented three of its Answers to Interrogatories on July 13,[5] but still did not respond to the July 7 letter.  Counsel for the parties conferred about the discovery issues and agreed that Attachmate would respond in writing by August 19.  Attachmate provided no response and on August 20, counsel for Fidelity emailed Attachmate's counsel about Attachmate's response to the letter.  Attachmate supplemented its production on August 23 and promised to respond to the July 7 letter by the 24th.

Attachmate finally provided a response to the letter on August 25th.[6]  The letter did not resolve all of Attachmate's deficiencies, and the parties conferred on the phone on September 12.  Attachmate stated it would check on certain matters Fidelity continued to raise, and for other matters the parties agreed they were at an impasse and they had satisfied their meet and confer obligations.  As recently as September 14, Attachmate made yet

---

[4] A true and accurate copy of the July 7 letter is attached hereto as Exhibit D.
[5] A true and accurate copy of Attachmate's Supplemental Responses to the Interrogatories is attached hereto as Exhibit E.
[6] A true and accurate copy of Attachmate's August 25, 2016 letter is attached hereto as Exhibit F.

another small supplemental production of responsive documents. On September 15, Attachmate supplemented one of its Interrogatory answers, but yet again this response failed to truly answer the Interrogatory. To date, Attachmate has not supplied any additional answers to the matters it told Fidelity it would provide.

The discovery process is supposed to be self-tending. Attachmate has repeatedly delayed production of responsive information for five months, requiring that Fidelity continue to press Attachmate to produce the documents and information it should have produced in May. Moreover, Attachmate has flatly refused to produce certain categories of relevant and discoverable information. Attachmate should be compelled to provide the documents and information Fidelity requested months ago that are central to this dispute.

## LEGAL ARGUMENT

Fidelity has been accused of owing several million dollars in license fees by a company whose business plan is to extort such inflated fees from its customers. Fidelity is trying to use the discovery process to ascertain whether any part of the demand is legitimate or if Fidelity has fallen prey to Attachmate's deceptive acts. Attachmate, however, refuses to produce documents that go to the heart of this dispute, and it had offered no sound basis for its refusal. In particular, Attachmate has refused and/or failed to provide sufficient responses to Fidelity's Discovery regarding (1) the interpretation of the licenses, (2) details about the software inventory that Deloitte conducted on Attachmate's behalf of Fidelity, (3) details about this software inventory process as it has been applied to other Attachmate customers, (4) specific deposition transcripts of Attachmate employees -- portions of which are already in the public domain and reveal that Attachmate purposefully incentivizes its employees to

5

find extreme over-deployments of software during these software inventories, and (5) all communications between Fidelity and Attachmate.

This Discovery is relevant, proper and should be answered in full under the Federal Rules. The "Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *MapleWood Partners, L.P. v. Indiana Harbor Ins. Co.*, 295 F.R.D. 550, 580 (S.D. Fla. 2013). Indeed, the "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *First Coast Energy, L.L.P. v. Mid-Continent Casualty Co.*, 286 F.R.D. 630, 632 (M.D. Fla. 2012).

There is no justification for withholding these relevant documents either, especially in light of the fact that it is only Attachmate who possesses this information. "To sustain its discovery objections in response to the pending motion[] to compel," Attachmate must show "that the requested discovery has no possible bearing on the claims and defenses in this case" by proving "either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure." *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007). Because the Discovery is directly relevant to several claims and defenses in this suit, Attachmate should be compelled to respond completely.

## A. **Information Regarding the Language of the Licenses Should be Produced.**

One of the key issues in this software licensing dispute is the interpretation of the terms of the licensing agreements.  To the extent any provisions in these contracts drafted by Attachmate are found ambiguous, the parties' own interpretations are relevant.  Moreover, whether Attachmate informed its customers of the way it construed these licensing agreements is relevant to Fidelity's affirmative claim under Florida's Deceptive Unfair Trade Practices Act ("FDUTPA").   Thus, Fidelity served Requests Nos. 4-9 and 38 seeking documents regarding Attachmate's interpretation of the licensing agreements.  The Requests also seek all communications between Attachmate and its customers or vendors explaining changes to the licenses or its interpretation.  Attachmate refused to respond to these requests. The written requests and Attachmate's litany of objections are as follows:

REQUEST NO. 4: All documents concerning or relating to the terms "run" and/or "otherwise interact with" as those terms appear in licenses attached as Exhibits 6, 7, and 9 to your Counterclaim.

RESPONSE: Attachmate incorporates its general objections[7] into this response. Attachmate objects to the request because: (i) the phrases "run" and "otherwise interact with" are unambiguous and the license terms speak for themselves; (ii) it is unclear what constitutes a document "relating to" the use of a phrase in a contract; (iii) the request appears to seek privileged information; (iv) the request is generally overly broad and unduly burdensome in that it appears to request the production of millions of pages of documents that might reference these terms; (v) the request is not proportional to the needs of this case and the burden and cost of responding to it far outweigh any likely benefit of the information sought; and (vii) the request seeks irrelevant information because it encompasses software products and software licenses that are not at issue here. Attachmate will not respond to the request as it is currently drafted.

REQUEST NO. 5: Any notes, communications, or other documents related to the drafting of licenses for the Software In Dispute.

RESPONSE:    Attachmate incorporates its general objections into this response. Attachmate objects to this request on the grounds that it is overbroad as to scope and time, unduly burdensome, and seeks confidential and/or privileged information. Attachmate further objects to this request to the extent it seeks drafts, communications, or amendments to license

---

[7] Attachmate asserted an additional 11 paragraphs of "general objections," which can be found on pages 1-4 of its Responses to the Requests for Production.

agreements which may have been used with Attachmate's customers who are non-parties to this lawsuit and that are neither relevant nor likely to lead to the discovery of admissible evidence. Attachmate will not respond to the request as it is currently drafted.

REQUEST NO. 6: All internal documents concerning or relating to changes and/or modifications to the language or terms of any license for the Software In Dispute including but not limited to changes relating to the terms "use," "run," "monitor", and/or "control."

   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects to this request on the grounds that it is overbroad as to scope and time, unduly burdensome, and seeks confidential and/or privileged information. Attachmate further objects to this request to the extent it seeks drafts, communications, or amendments to license agreements which may have been used with Attachmate's customers who are non-parties to this lawsuit and that are neither relevant nor likely to lead to the discovery of admissible evidence. Attachmate will not respond to the request as it is currently drafted.

REQUEST NO. 7: All internal documents concerning or relating to changes and/or modifications to the language or terms of any license for any other Attachmate terminal emulation software.

   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects to this request on the grounds that it is overbroad as to scope and time, unduly burdensome, and seeks confidential and/or privileged information. Attachmate further objects to this request to the extent it seeks drafts, communications, or amendments to license agreements which may have been used with Attachmate's customers who are non-parties to this lawsuit and that are neither relevant nor likely to lead to the discovery of admissible evidence. Attachmate will not respond to the request as it is currently drafted.

REQUEST NO. 8: All communications between Attachmate and its vendors or its customers relating to changes and/or modifications to the language or terms of any license agreement for the Software Products.

   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects to this request on the grounds that it is overbroad as to scope and time, unduly burdensome, and seeks communications with third-parties that are neither relevant nor likely to lead to the discovery of admissible evidence. Attachmate objects that the request seeks the production of communications about software products that are not at issue. Attachmate further objects that the request appears to seek a production that requires the review of each and every e-mail and correspondence with third-party vendors or customers to seek information that is not even remotely relevant nor likely to lead to discovery of admissible evidence. The burden of attempting to respond to this request is excessive and disproportionate to the remote, unlikely chance that Fidelity discovers anything relevant. Attachmate will not respond to the request as it is currently drafted.

REQUEST NO. 9: All documents and communications concerning any click-wrap license related to the Software Products.

   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects that the request is vague and ambiguous with regard to the terms "concerning" and "related," such that it appears to seek production of all documents that touch on or possibly mention "click-wrap licenses." Such a request is overbroad and unduly burdensome in that it almost certainly requires the production of millions of pages of documents that might reference these terms, the request is not proportional to the needs of this case and the burden and cost of responding to it far outweigh any likely benefit of the information sought, and the request seeks

irrelevant information because it encompasses software products and software licenses that are not at issue here. Attachmate will not respond to the request as it is currently drafted.

REQUEST NO. 38: All documents concerning or relating to the efforts made by Attachmate to inform its customers of the Software In Dispute of the requirements of compliance with the applicable licenses.

RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects that the request is vague and ambiguous with regard to the terms "efforts made by Attachmate to inform its customers," and "requirements of compliance." The license agreements applicable to Attachmate's software products speak for themselves and constitute the terms of the licenses conveyed to customers. Attachmate objects that the request is overbroad and unduly burdensome as it is unlimited in time and scope, and that it seeks information regarding third-party customers and software that is not at issue in this case. Attachmate objects that the request would require Attachmate to canvass, review and produce every document discussing licenses sent to any of its tens of thousands of customers and is grossly overbroad; the request is not proportional to the needs of this case and the burden and cost of responding to it far outweigh any likely benefit of the information sought. Attachmate will not respond to the request as currently drafted.

These Requests are directly relevant to the affirmative and declaratory action relating to Fidelity's purported breach of the licenses. Liability for breach of contract hinges on the meaning of certain words in the licenses, and Attachmate's current and prior interpretations of the contested language may bear on how the licenses are interpreted. Fidelity must be permitted to conduct discovery to develop its defenses. Moreover, Attachmate's contention that it is immune from such discovery because Attachmate does not believe the terms are ambiguous is without merit. The Middle District of Florida holds that negotiations and drafts of contracts one party claims are ambiguous are discoverable even though the other party claims the contracts are unambiguous. *World Triathlon Corp., Inc. v. Dawn Syndicated Prods.*, No. 8:05-cv-983-T-27EAJ (M.D. Fla. Jan. 8, 2007).

Further, how Attachmate has previously interpreted the licenses is relevant to Fidelity's claim under the FDUTPA. To prevail on its FDUTPA claim, Fidelity must show (1) unfair or deceptive trade practice (2) causation and (3) actual damages. *PNR, Inc. v.*

*Beacon Property Mgmt., Inc*., 842 So.2d 773, 777 (Fla. 2003).  A deceptive act occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Sundance Apartments I, Inc. v. Gen. Elec. Capital Co.*, 581 F.Supp.2d 1215, 1220 (S.D. Fla. 2008).  Consequently, Florida District Courts readily permit discovery relating to the deceptive acts giving rise to an FDUTPA claim.  *See Ameritox, Ltd. v. Aegis Services Co.*, 2008 WL 4540063 (S.D. Fla. Oct. 10, 2008) (allowing discovery regarding false advertising as a theory for deceptive acts because it was relevant to plaintiff's claim under the FDUTPA).

Fidelity has alleged that Attachmate knowingly and purposefully committed wrongful and deceptive trade practices by, among other things, committing improper audits that fail to take into account the terms of the licenses, misrepresenting to its customers the purported meaning of the licenses in order to justify the meritless auditing results, and waiting several years to inventory its customers' usage while knowing the customers were not using the same fabricated interpretation of the licenses as Attachmate.  The Discovery seeks information and evidence of these facts, as well as Attachmate's representations and omissions that are likely, and indeed have misled its customers.

Accordingly, Requests 4-9 and 38 seek information that is relevant to numerous issues in this case and Attachmate's objections are without merit.  Attachmate should be compelled to respond.

**B.  Information Regarding the Software Verification Review of Fidelity and Others.**

Attachmate unilaterally decided to conduct an "audit" of Fidelity by employing Deloitte to perform a software inventory of Fidelity's systems.  Using that

inventory count, which did not include any examination of the licenses or how Fidelity actually deployed and used the software, Attachmate reached the conclusion that Fidelity owed millions of dollars in licensing fees.  As discussed in the briefing on Fidelity's pending Motion for Partial Judgment on the Pleadings (Dkts. 38, 42), Attachmate's EULA terms vary wildly over time and products.  As such, the inventory count does not support Attachmate's demand for millions of dollars in license fees.  Fidelity served Requests Nos. 26-29, 32-33, and 36, and Interrogatories 3, 6, 12-16, and 18-19 to understand where the demand was derived from then since it did not come from an application of the EULA terms.  Fidelity also served these requests to understand how Attachmate performed these inventories and made resulting demands with other customers so that Fidelity could explore Attachmate's business practices – which go to the heart of Fidelity's FDUTPA claim.  Attachmate has stonewalled Fidelity on anything relating to other customers and has provided no legitimate basis to withhold this relevant information.  This Discovery and Attachmate's protracted objections are as follows:

i)  *Requests 26-29: documents relating to Deloitte*

REQUEST NO. 26: All documents and communications between Deloitte and Attachmate regarding Attachmate's audit procedures.

 RESPONSE: Attachmate incorporates its general objections[8] into this response. Attachmate objects that the seeks the production of all communications between Deloitte and Attachmate regarding any audit of hundreds conducted by Deloitte a year, which is unreasonably disproportionate to the *de minimus* likelihood of discovering any relevant information. Such a request is overbroad and unduly burdensome in that it appears to require the production of millions of pages of documents that might reference these terms, the request is not proportional to the needs of this case and the burden and cost of responding to it far outweigh any likely benefit of the information sought, and the request seeks irrelevant

---

[8] Again, Attachmate incorporated its 11 additional paragraphs of "general objections" on top of the stream of objections articulated for each Request.

information because it encompasses software products and software licenses that are not at issue here. Attachmate will produce communications between Deloitte and Attachmate regarding the Fidelity audit, but will not respond to the remainder of the request as it is currently drafted.

REQUEST NO. 27: All agreements or contracts between Deloitte and Attachmate.
   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate further responds that the request is unduly burdensome and overbroad as it is unlimited in scope and time. Notwithstanding and without waiving its objections, Attachmate responds that it will produce the agreement between Deloitte and Attachmate regarding Deloitte's license verification services provided to Attachmate effective during the time of the Fidelity audit.

REQUEST NO. 28: All documents relating to the compensation structure between Attachmate and Deloitte with respect to Deloitte's software compliance audits.
   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate further responds that the request is unduly burdensome and overbroad as it is unlimited in scope and time. Notwithstanding and without waiving its objections, Attachmate responds that it will produce the agreement between Deloitte and Attachmate regarding Deloitte's license verification services provided to Attachmate effective during the time of the Fidelity audit.

REQUEST NO. 29: All documents or communications between Attachmate and Deloitte relating to Fidelity, including but not limited to the actual communication documents, all Deloitte reports or findings related to its audit of Fidelity, and all information provided to Deloitte before and during the audit of Fidelity.
   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate further responds that the request seeks production of information that is within the exclusive possession, custody and control of Fidelity, as Fidelity is the party that provided the data for the audit conducted by Deloitte. Notwithstanding and without waiving its objections, Attachmate responds that it will produce communications between Deloitte and Attachmate regarding the Fidelity audit.

ii)      *Requests Nos. 32-33, 36 and Interrogatories Nos. 12-15, 18-19: the policies, procedures, methodologies, training, and compensation incentives for the audits*

REQUEST NO. 32: All documents concerning or reflecting the method(s) by which Attachmate audits its customers.
   RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects that the request is vague and ambiguous regarding the terms "reflecting the methods" and to the extent the request seeks production of documents related to third-party customer audits, which Attachmate will not produce. Notwithstanding and without waiving its objections, Attachmate responds that it will produce responsive documents regarding its highly confidential compliance program.

REQUEST NO. 33: All documents concerning or relating to training, instructions, or information provided to anyone who performs an audit of Attachmate software products for or on behalf of Attachmate, including but not limited to Attachmate employees or a third-party auditor.

12

**RESPONSE:** Attachmate incorporates its general objections into this response. Attachmate objects that the request is vague and ambiguous regarding the terms "training," and "instructions." Attachmate will not provide information or documents related to the audits of third-parties. Notwithstanding and without waiving its objections, Attachmate responds that it will produce responsive documents regarding its highly confidential compliance program.

REQUEST NO. 36: All documents concerning or relating to performance standards, targets, forecasts, projections, expectations, goals or quotas for or applicable to any Attachmate employee or representative who is involved with software audits and/or software compliance.

**RESPONSE:** Attachmate incorporates its general objections into this response. Attachmate objects that the request seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence and seeks private financial information. In particular, this dispute is about Fidelity's copyright infringement and breach of contract, and documents regarding the salaries and payment structures for Attachmate's employees have no bearing on this litigation. Attachmate also objects that the request is vague and ambiguous with regard to its intention to seek compensation structures that "relating to performance standards, targets, forecasts, projections, expectations, goals or quotas" regarding employees "who are involved" with audits, which may be interpreted as overbroad and unduly burdensome, and further objects that the request is overbroad to the extent the request seeks production of "all" documents "concerning" this topic. Notwithstanding and without waiving its objections, Attachmate responds that it will prepare and make available a corporate witness to testify on its behalf regarding the bonus and salary structure for compliance managers. Attachmate will not produce information about highly-sensitive compensation plans for individuals because such information is not proportional to the needs of the case and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 12:  Identify and describe Attachmate's license compliance policies and processes, including but not limited to how Attachmate determines when to audit a customer, which customers are chosen to be audited, and the methodology used to determine whether there have been any over-deployments.

**ANSWER:** Attachmate incorporates its general objections[9] into this response. Attachmate objects that the interrogatory to the extent it seeks information about other customers or third-parties; Attachmate will not provide such information. Attachmate also objects to the extent the interrogatory seeks information regarding the "methodology used to determine whether there have been any over-deployments," as the audit conducted at Fidelity was handled by Fidelity and a third-party auditor, Deloitte & Touche. As such, information regarding the processes and procedures utilized by Fidelity in providing the audit data, and Deloitte's management of the audit is not within the exclusive possession, custody or control of Attachmate. Notwithstanding and without waiving its objections, Attachmate responds that pursuant to Federal Rule of Civil Procedure 33(d), Attachmate will produce responsive documents regarding its highly confidential compliance program.

INTERROGATORY NO. 13:  For each software compliance audit performed by you or on your behalf in the past five (5) years, identify:
(a)  the total number of audits performed,

---

[9] Attachmate's 12 "general objections" to the Interrogatories are found at pages 1-4 of Attachmate's Answers to Interrogatories.

(b) the number of audits wherein Attachmate concluded that the customer was in full compliance with the customer's applicable licenses; and

(c) for each audit wherein Attachmate concluded that the customer was in full compliance with the applicable licenses, identify the specific software product(s) (type and version) and license agreement(s) that was the subject of the audit.

ANSWER: Attachmate incorporates its general objections into this response. Attachmate objects that the interrogatory seeks the production of information that is neither relevant nor calculated to lead to the discovery of admissible evidence. Attachmate does not maintain formal records regarding total number of audits over the years, much less percentages and numbers regarding customers found compliant and noncompliant -- because of this, to determine even whether a customer was found compliant would require review of each and every customer file, and gathering of information and customers' purchase histories specific to each audit (*e.g.* software products and versions for which licenses were purchased) which could take up to a dozen hours *for each audit.* This excessive and monumental burden is disproportionate to the *de minimus* relevance any of this information would have for any claim or defense at issue in this case. For example, if Attachmate disclosed that Customer A was found in compliance during an audit initiated in 2013, and that Customer A had properly deployed EXTRA! Mainframe Server Edition v. 8.0, for what purpose would Fidelity use that information? If Fidelity found out that Customer B was not in compliance in 2010, how does that affect Fidelity's and Attachmate's respective claims and defenses? This information is irrelevant and does not make any material fact more or less likely here. Attachmate will not respond to this interrogatory.

INTERROGATORY NO. 14:  Identify and describe Attachmate's policies and practices with customers who over-deploy or misuse software.

ANSWER: Attachmate incorporates its general objections into this response. Attachmate objects that the interrogatory is vague and ambiguous with regard to the term "misuse software." Notwithstanding and without waiving its objections, Attachmate responds that pursuant to Federal Rule of Civil Procedure 33(d), Attachmate will produce responsive documents regarding its highly confidential compliance program.

INTERROGATORY NO. 15: Identify and describe Attachmate's policies and procedures for enforcing its license agreements and copyrights.

ANSWER: Attachmate incorporates its general objections into this response. Attachmate objects that the interrogatory is vague and ambiguous with regard to the information sought. Notwithstanding and without waiving its objections, Attachmate responds that pursuant to Federal Rule of Civil Procedure 33(d), Attachmate will produce responsive documents regarding its highly confidential compliance program.

INTERROGATORY NO. 18:  For each and every sale of licenses in the past five (5) years of any Attachmate terminal emulation software, including but not limited to the Software In Dispute, that occurred after an audit revealed over-deployments or an insufficient number of licenses, identify the sales price, gross income, net income, gross profit margin, net profit margin, gross profit and net profit associated with each sale of a license.

ANSWER: Attachmate incorporates its general objections into this response. Attachmate also objects that the interrogatory seeks information regarding third-party customer audits, which Attachmate will not provide. Attachmate also objects that the interrogatory is overbroad and excessively burdensome in requesting sales information for tens of thousands of customers

who have been audited by Attachmate over the last five years -- Attachmate objects that to the extent the information sought exists, the interrogatory is excessively burdensome and requires searches that would be prohibitively time-consuming and expensive because each customer's audit would have to be searched individually. Attachmate does not track or record the "gross income," "net profit," "gross profit margin," "net profit margin," "gross profit," or "net profit" for each of its tens of thousands of license sales the ordinary course of business, and moreover, to the extent that Fidelity seeks pricing and "profits" for any of the hundreds of software products or versions not at issue in this case or sold to third-parties, this request is not even remotely proportional to the needs of this case. This is particularly true where Attachmate will produce to Fidelity its records regarding Fidelity's purchase history and invoices, and the amounts that Fidelity itself has paid for the software licenses at issue in this case. Attachmate will also produce to Fidelity Attachmate's highly confidential price lists for third-party distributors, resellers and direct sales to customers, which include potential discount levels. Attachmate will not produce to Fidelity other irrelevant pricing information related to other customers or other software products.

INTERROGATORY NO. 19:    For each and every sale of licenses in the past five (5) years of any Attachmate terminal emulation software, including but not limited to the Software In Dispute, outside the context of a compliance audit, produce documents sufficient to identify the sales price, gross income, net income, gross profit margin, net profit margin, gross profit and net profit associated with each sale of a license.

    ANSWER: Attachmate incorporates its general objections into this response. Attachmate also objects that the interrogatory seeks information regarding sales to third-party customers, which Attachmate will not provide. Attachmate also objects that the interrogatory is overbroad and excessively burdensome in requesting sales information for tens of thousands of customers who have purchased Attachmate software licenses over the last five years -- Attachmate objects that to the extent the information sought exists, the interrogatory is excessively burdensome and requires searches that would be prohibitively time consuming and expensive because each customer's records would have to be searched individually. Attachmate does not track or record the "gross income," "net profit," "gross profit margin," "net profit margin," "gross profit," or "net profit" for each of its tens of thousands of license sales the ordinary course of business, and moreover, Attachmate not the only party selling its software licenses. Attachmate does not know and does not control what software resellers charge for licenses, and what types of discounts third-parties are applying to software license sales. To the extent that Fidelity seeks pricing and "profits" for any of the hundreds of software products or versions not at issue in this case and sold to third-parties, this request is not even remotely proportional to the needs of this case. This is particularly true where Attachmate will produce to Fidelity its records regarding Fidelity's purchase history and invoices, and the amounts that Fidelity itself has paid for the software licenses at issue in this case. Attachmate will also produce to Fidelity its highly confidential price lists for third-party distributors, resellers and direct sales to customers, which include potential discount levels. Attachmate will not produce to Fidelity other irrelevant pricing information related to other customers or other software products.

*iii)*    *Interrogatory Nos. 3 and 16 – determination of Fidelity's over-deployments*

INTERROGATORY NO. 3:  For each of the Software Products, identify:
(a) the number and type of license(s) Fidelity purchased (whether single user, volume, concurrent, or otherwise);

(b) the date each license was purchased;

(c) what contract governs the terms of the Software Product;

(d) who drafted the contract;

(e) the price Fidelity paid for each license, including any applicable discounts given to Fidelity; and

(f) how Attachmate monitored Fidelity's purchase and use of the licensed software.

ANSWER: Attachmate incorporates its general objections into this response, specifically, that the definition of "Software Products" is overbroad in that it includes software products that are not at issue in this lawsuit, and that this interrogatory contains multiple discrete subparts, which Attachmate will treat as separate and distinct interrogatories. Attachmate also objects that the interrogatory is duplicative of Interrogatory Nos. 1 and 2, and that the interrogatory requests information that is either equally available to Fidelity, or in the exclusive possession, custody or control of Fidelity.

Notwithstanding and without waiving its objections, Attachmate responds that with regard to Interrogatory Nos. 3(a), (b) and (e), Attachmate will respond pursuant to Federal Rule of Civil Procedure 33(d) and produce records providing the information sought by these interrogatories.

With regard to Interrogatory No. 3(c), Attachmate responds that the interrogatory is duplicative of Interrogatory Nos. 1 and 2, and refers Fidelity to those responses above.

With regard to Interrogatory No. 3(d), Attachmate responds that Attachmate or Attachmate's predecessor-in-interest, WRQ, Inc. drafted the contracts at issue in this dispute.

With regard to Interrogatory No. 3(f), Attachmate responds that Attachmate did not "monitor" Fidelity's purchase and/or use of Attachmate's software products -instead, the license agreements for the Software In Dispute specifically provide that it was Fidelity's contractual obligation to properly manage and control its deployments of Attachmate software in accordance with the terms of the SLAs. The licenses provide for an audit right for Attachmate to confirm Fidelity's compliance (or lack thereof) with the parties' license agreements, which Attachmate invoked in January 2015.

SUPPLEMENTAL ANSWER: Notwithstanding and without waiving its objections, Attachmate responds that with regard to Interrogatory No. 3(a), Fidelity's purchase history as maintained in the ordinary course of business by Attachmate indicate that the licenses purchased by Fidelity for Software in Dispute were device-based licenses, with the exception of the licenses for Reflection for the Web 2014 R1 v. 12.0 and Reflection for the Web 2014 R1 v. 12.1, which are user-based licenses. Attachmate further answers Interrogatory No. 3(a) pursuant to Federal Rule of Civil Procedure 33(d) and refers Fidelity to the information included in the documents produced by Attachmate at ATTACH-FNF0000276 and ATTACH-FN008502-8619-8891.

Attachmate otherwise stands by its existing objections and responses to Fidelity's First Set of Interrogatories and Requests for Production.[10]

INTERROGATORY NO. 16:   Identify and describe Attachmate's process, policies, and/or procedures of maintaining its customers' purchase history.

ANSWER: Attachmate incorporates its general objections into this response. Notwithstanding and without waiving its objections, Attachmate responds that it tracks direct sales of licenses to customers and purchases of software licenses through third-party resellers in a database using a proprietary software application called Siebel. Upon request, Attachmate's records of a customer's license entitlement may be extracted from the database for review.

---

[10] A true and accurate copy of the Supplemental Interrogatory Responses served on September 15, 2016 are attached hereto as Exhibit K.

Fidelity's purchase history as maintained by Attachmate in the ordinary course of business will be produced pursuant to Federal Rule of Civil Procedure 33(d). Without more detail regarding the information sought, Attachmate cannot provide further response to this interrogatory beyond these generalities.

Overall, the information requested seeks to establish Attachmate's license inventory procedures and policies, and how those policies were applied to Fidelity. Specifically, Fidelity must be able to know how Attachmate kept its records of Fidelity's purchases and whether Attachmate properly counted all purchases in reaching its highly inflated demand for license fees. The methodologies and procedures Deloitte used in its software license review on behalf of Attachmate also identify whether Attachmate's conclusions regarding Fidelity's purported over-deployment is accurate. These facts are relevant to the affirmative and declaratory claims regarding breach of contract and copyright infringement.

Notably, Attachmate seems to concede the relevancy of the information sought as Attachmate affirmatively stated it would produce documents regarding Fidelity and information in effect during Fidelity's audit. *See* Responses to Requests Nos. 26-29. Nevertheless, Attachmate did not produce such documents. First, there are no documents describing procedures or methodologies as requested in Request 26. Second, only one email stating fees billed by Deloitte was produced in response to Request 28. It is doubtful that no other documents or communications exist in Attachmate's possession addressing how much Deloitte would be billing, or did bill for its services. Third, there are very few communications produced in response to Request 29 between Deloitte and Attachmate, which is again surprising given that Attachmate's entire basis for its demand is Deloitte's

work. Specifically, no communications were produced between Attachmate and Deloitte before the audit began outside of a few emails regarding running a conflict check.

Similarly, Attachmate stated that it would produce documents to answer Interrogatories Nos. 3 and 16, but the documents produced do not answer the questions asked.  They do not answer the type of each license purchased (No. 3(a)), the price Fidelity paid for each license (No. 3(e)), or how Attachmate maintains records of licenses purchased (No. 16).  Attachmate should be compelled to respond in writing to these Interrogatories and without directing Fidelity to thousands of pages of documents, which in any event do not provide complete answers.

Although Attachmate concedes information about its inventory procedures are relevant, Attachmate has outright refused to provide any information on its practices and policies as they have been applied to other customers.  As discussed above, the blanket wall that Attachmate has thrown around the same acts Attachmate has committed with other customers is without merit.  It is undisputed that Attachmate has a history of engaging in litigation with its customers arising out of Attachmate's software license verification review or audit. The Discovery seeks information that will identify how frequently the purported audits concluded in over-deployments, and any monetary incentives Attachmate or Deloitte received for reaching such conclusions.  This information is directly relevant to Fidelity's claim under the FDUTPA.

Attachmate should therefore be compelled to respond in full to these requests, as each seeks information that is central to this case.

C. **Deposition Transcripts Regarding Attachmate's License Interpretation, Audit Procedures, and Deceptive Acts.**

Fidelity requested specific deposition transcripts that were partially filed in other Attachmate litigation matters, which portions speak directly to Attachmate's audit procedures and significantly, Attachmate's program to incentivize its employees to reach very high settlement amounts during a license inventory investigation.  In light of that testimony, Fidelity also requested any other testimony stating similar things that Fidelity has been unable to access itself.  This testimony is direct evidence of Attachmate's unscrupulous behavior and tactics with other customers, and is therefore fact evidence that supports Fidelity's FDUTPA claim.   Moreover, the testimony is additional evidence regarding Attachmate's interpretation of the licenses and how other customers interpreted the licenses, all which go towards finding a meaning to the ambiguous licensing agreements.  Attachmate yet again refused to produce anything, despite there being no burden and no prior obligations barring such production of this relevant evidence.  The requests and Attachmate's unfounded objections are as follows:

REQUEST NO. 41: A complete copy of the full deposition transcript of Philip Swadener taken in *Attachmate v. Health Net,* No. C09-1161 MPJ (W.D. Wash.).

REQUEST NO. 42: A complete copy of the full deposition transcript of Cheryl Fusaro taken in *Attachmate v. Health Net,* No. C09-1161 MPJ (W.D. Wash.).

REQUEST NO. 43: A complete copy of the full deposition transcript of Lee Taylor taken in *Attachmate v. Health Net,* No. C09-1161 MPJ (W.D. Wash.).

REQUEST NO. 44: A complete copy of the full deposition transcript of Brent Slonecker taken in *Saks Inc. v. Attachmate,* No. 14-cv-4902 (S.D. N.Y.).

REQUEST NO. 45: A complete copy of the full deposition transcript of Darren Rice taken in *Saks Inc. v. Attachmate,* No. 14-cv-4902 (S.D. N.Y.).

RESPONSE to Nos. 41-45:[11] Attachmate incorporates its general objections in this response. Attachmate objects that the request seeks the production of information that is neither relevant nor likely to lead to the discovery of admissible evidence. Deposition transcripts from an employee having nothing to do with the Fidelity audit, from another case involving a different customer, different software and different factual scenarios have no bearing on any

---

[11] Attachmate's responses to Requests Nos. 41-45 are identical and have been restated once herein for brevity.

claim or defense here. Such "cloned" or "piggybacking" discovery is met with disapproval by courts to consider the issue; Fidelity should be required to do its own work. Attachmate also objects that the material sought is subject to the terms of another court's protective order which survives termination of that case. Attachmate will not respond to the request.

REQUEST NO. 46: A complete copy of any deposition testimony by Attachmate describing or explaining Attachmate's interpretation of all or any portion of its software license agreements.

　　RESPONSE: Attachmate incorporates its general objections in this response. Attachmate objects that the request seeks the production of information that is neither relevant nor likely to lead to the discovery of admissible evidence. Attachmate's license agreements speak for themselves. Moreover, deposition transcripts explaining license agreement terms involving different software have no bearing on any claim or defense here. Such "cloned" or "piggybacking" discovery is met with disapproval by courts to consider the issue; Fidelity should be required to do its own work. Fidelity may (and has) requested Attachmate's interpretation of the software license agreements at issue in this case; requesting that Attachmate cull through each and every deposition transcript from prior cases having nothing to do with this lawsuit searching for "descriptions" or "explanations" of license terms not at issue is not even remotely proportionate to the needs of this case. Attachmate also objects that the material sought is subject to the terms of another court's protective order which survives termination of that case. Attachmate will not respond to the request.

REQUEST NO. 47: A complete copy of any deposition testimony by any Attachmate customer describing or explaining the customer's interpretation of all or any portion of Attachmate's software license agreements.

　　RESPONSE: Attachmate incorporates its general objections in this response. Attachmate objects that the request seeks the production of information that is neither relevant nor likely to lead to the discovery of admissible evidence. Attachmate's license agreements speak for themselves. Moreover, deposition transcripts explaining license agreement terms involving different software have no bearing on any claim or defense here. Such "cloned" or "piggybacking" discovery is met with disapproval by courts to consider the issue; Fidelity should be required to do its own work. Fidelity may (and has) requested Attachmate's interpretation of the software license agreements at issue in this case; requesting that Attachmate cull through each and every deposition transcript from prior cases having nothing to do with this lawsuit searching for "descriptions" or "explanations" of license terms not at issue is not even remotely proportionate to the needs of this case. Attachmate also objects that the material sought is subject to the terms of another court's protective order which survives termination of that case. Attachmate will not respond to the request.

　　Attachmate's objections are without merit and the information sought is tailored to seek information that is relevant to Fidelity's FDUTPA claims as well as Attachmate's breach of contract claim. Among other things, the deposition transcripts will show how Attachmate interprets licenses with other customers. Whether Attachmate maintains the same interpretation for each customer and for each license is highly relevant to Attachmate's

deceptive acts.  It is also relevant to understanding how Attachmate believes the contract should be interpreted, which is relevant to the breach of contract claim in the event the licenses are found ambiguous (which other Federal District courts have found as to Attachmate's licenses).  *See Epic Systems Corp. v. Attachmate Corp*., No. 15-cv-179-bbc, 2016 WL 3461596 (W.D. Wisc. June 21, 2016).

Further, a portion of the transcript of Attachmate employee Darren Rice filed in another Attachmate software license litigation discusses that Attachmate strives to generate profits solely from auditing and compliance activities, and in doing so distributes bonuses to its compliance team when it reaches its annual target that previously was $100 million. *See* Rice Dep. at 44:10-11.[12]  This is an explicit example of Attachmate's deceptive and unfair trade practices and is relevant to Fidelity's FDUTPA claim.

Accordingly, Fidelity is not "piggybacking" or "cloning" discovery in any fashion. These transcripts are fact evidence to prove and defend against the claims brought in this suit. The facts are also quite reliable, given that the deponent was under oath and presumably Attachmate was present to object as it felt appropriate.

Attachmate also misses the mark in trying to withhold this relevant information when it argues the facts of other cases are different than the present.  This argument goes to the weight of this evidence if it is eventually relied upon, but that is not what's in question now. Rather, this discovery stage requires production of all relevant non-privileged documents.

Indeed, Federal Courts that have considered the matter hold that prior deposition testimony of a party's employees discussing deceptive or bad faith tactics are relevant and

---

[12] A true and accurate copy of this excerpt from Darren Rice's deposition in *Saks v. Attachmate* as it was filed in that case is attached hereto as Exhibit G.

should be produced in present litigation alleging deceptive or bad faith acts.  For example, in *Graceway Pharmaceuticals, LLC v. River's Edge Pharmaceuticals, LLC*, the district court held the deposition transcripts of defendant's employees in prior false advertising lawsuits were relevant to plaintiff's claim in the present suit regarding defendant's false advertising. No. 2:08-cv-00067-RWS, 2008 WL 4787517 at * 1 (N.D. Ga. Oct. 27, 2008).  The Court granted plaintiff's motion to compel and ordered the production of the transcripts.  *Id.*; *see also Nye v. Hartford Accident and Indemnity Co.,* No. 12-5028-JLV, 2013 WL 3107492 (D. S.D. June 18, 2013) (granting plaintiff's motion to compel and requiring production of deposition transcripts that were taken in prior litigation involving insurer's bad faith, holding such evidence was relevant to the present claim of bad faith).

Attachmate's additional basis for refusal, that the documents are subject to a protective order, has no merit either.  Attachmate produced two protective orders that it claims prohibits disclosure.[13]  Attachmate has not identified how the orders prohibit disclosure, and instead the orders expressly permit the producing party – here Attachmate – to disclose the information without restriction.[14]  Moreover, even if Attachmate claims it is not the producing or designating party, the protective orders contemplate requests such as Fidelity's and outline steps that should be taken to try and alert the producing party so that it may respond to the request.[15]  There has been no indication that Attachmate is making any effort to take these steps.  Instead, Attachmate has flatly refused to do anything.

---

[13] True copies of the protective orders provided by Attachmate are attached hereto as Exhibits H and I.

[14] *See* Ex. H, *Saks* Protective Order, ¶ 16; Ex. I, *Health Net* Protective Order, ¶ 18.

[15] *See* Ex. H, *Saks* Protective Order ¶ 10; Ex. I, *Health Net* Protective Order, ¶ 13.

Attachmate should be compelled to respond completely to these Requests, as they seek fact evidence regarding both Attachmate's interpretation of the licenses and its deceptive acts.

### D.  All Documents Relating to Fidelity, and its Use of the Software.

Fidelity has been accused of overusing the software based upon just that, Fidelity's purported "use" of it.  Naturally, Fidelity made the simple Request for all documents related to Fidelity's use of the software.   Fidelity also requested any other documents related to Fidelity in Attachmate's possession to ensure all documents and communications in Attachmate's possession regarding or with Fidelity were produced.  Attachmate responded that it would produce documents, yet there is no question that it has failed to produce everything.  Upon comparing Fidelity's production with Attachmate's, several responsive emails were produced by Fidelity yet absent from Attachmate's production.  The Requests are as follows:

REQUEST NO. 2: All documents relating to Fidelity's use of the Software Products, including but not limited to, usage logs, deployment logs, user logs, etc.

RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects that the request seeks production of irrelevant information regarding "use" of Attachmate's software, where the licenses Fidelity owns are device-based licenses. Attachmate objects that the request seeks production of documents and information that is within the exclusive possession, custody and control of Fidelity -under the terms of the parties' contracts, Fidelity is the party entrusted with Attachmate's copyrighted software products and is the party responsible for maintaining records regarding Fidelity's deployment of Attachmate's software products. Notwithstanding and without waiving its objections, Attachmate responds that it will produce records regarding the license verification performed at Fidelity regarding its deployment of Attachmate software.

REQUEST NO. 25: All documents concerning or relating in any way to Fidelity, including but not limited to Attachmate's customer account records for Fidelity, and all actual communication documents with, referencing or otherwise regarding Fidelity.

RESPONSE: Attachmate incorporates its general objections into this response. Attachmate objects that the request is vague and ambiguous with regard to the term "relating in any way." Notwithstanding and without waiving its objections, Attachmate responds that it will produce Fidelity account records and documents regarding communications between Fidelity and Attachmate as they are maintained in the ordinary course of business.

Attachmate has not produced everything and has made no indication additional productions are forthcoming. For example, Fidelity produced emails between Attachmate and Fidelity spanning several years discussing purchases, usage of software, and soliciting purchases.[16] Significantly, these emails were not produced by Attachmate. Further, Attachmate produced a "confidential" email where one of its employees expressly state that Attachmate has "download logs" of Fidelity. No download logs were produced despite the Request explicitly asking for them.

Attachmate should be compelled to produce all responsive documents, as it is has seemingly cherry-picked some documents to withhold without any explanation or basis to do so.

### E. Attachmate Must Produce a Privilege Log for its Redactions and Withheld Documents.

Attachmate's production contains several redactions without any supporting basis. Fidelity requested Attachmate produce a privilege log explaining the redactions in its letter dated July 7, 2016. To date, Fidelity has not received a privilege log, or even a general claim as to why the documents contain redactions. To the extent Attachmate is withholding the redacted portions due to privilege, Attachmate is required to (1) expressly assert the privilege, and (2) produce a log detailing the withheld information in sufficient detail so that

---

[16] A true and accurate copy of examples of these emails are attached hereto as Exhibit J.

Fidelity may assess such claim. Fed. R. Civ. P. 26(b)(5).  To the extent Attachmate is not claiming any privilege, it must produce full copies of these documents without redactions. *See Republic of Equador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013) (permitting documents to be redacted so long as party making redactions provided a privilege log).

### <u>Conclusion</u>

For the foregoing reasons, Attachmate should be compelled to provide full and complete responses and documents to Requests Nos. 2, 4-9, 25-29, 32-33, 36, 38, 41-47; Interrogatories Nos. 3, 12-16, and 18-19; and produce a privilege log.

Respectfully submitted,

/s/ Stephen E. Reynolds
Thomas E. Mixdorf (Indiana Bar 16812-49)
E-mail: Thomas.Mixdord@icemiller.com
Stephen E. Reynolds (Indiana Bar 28032-49)
E-mail:  stephen.reynolds@icemiller.com
Kaitlyn J. Marschke (Indiana Bar 34144-29)
E-mail: Katie.Marschke@icemiller.com
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone No. 317-236-2391
Facsimile No. 317-592-4736

and

Tamarah E. Brodsky (Florida Bar 567108)
E-mail: Tamarah.Brodsky@fnf.com
Fidelity National Law Group
200 West Cypress Creek Road, Suite 210
Fort Lauderdale, Florida 33309
Telephone No: (954) 465-2145
Facsimile No: (954) 414-2101

*Attorneys for Plaintiff,*
*Fidelity National Financial, Inc.*

## RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with opposing counsel in a good faith effort to resolve the issues raised by this motion.  Counsel have been unable to agree to a resolution of the motion.

/s/ Stephen E. Reynolds

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Stephen E. Reynolds</u>

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282

27

I\10808289.5